# Illinois Official Reports

## Supreme Court

---

**_Wingert v. Hradisky_, 2019 IL 123201**

---

| | |
|---|---|
| Caption in Supreme Court: | NOAH WINGERT, a Minor, by His Mother and Next Friend, Cassandra Lee Wingert, Appellant, v. PATSY A. HRADISKY, Special Administrator of the Estate of Kevin Jatczak, Deceased, Appellee. |
| Docket No. | 123201 |
| Filed | March 21, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Daniel T. Gillespie, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded. |
| Counsel on Appeal | Nicholas Nepustil, of Benjamin & Shapiro Ltd., of Chicago, for appellant. |
| | Kyle McConnell, of Meagher & Geer, P.L.L.P., of Chicago, for appellee. |

Justices JUSTICE THOMAS delivered the judgment of the court.

Chief Justice Karmeier and Justice Garman concurred in the judgment and opinion.

Justice Burke concurred in part and dissented in part, with opinion, joined by Justice Neville.

Justice Theis concurred in part and dissented in part, with opinion, joined by Justice Kilbride.


**OPINION**

¶ 1 This is a direct appeal from a judgment of the circuit court of Cook County finding section 25(b)(2) of the Drug Dealer Liability Act (Act) (740 ILCS 57/25(b)(2) (West 2016)) facially unconstitutional.

¶ 2 BACKGROUND

¶ 3 Drug Dealer Liability Act

¶ 4 We begin with an overview of the Act. Effective in 1996 (see Pub. Act 89-293 (eff. Jan. 1, 1996)), the Act mirrors the Model Drug Dealer Liability Act that was provided to state legislators in the early 1990s by the American Legislative Exchange Council. Rosemary E. Williams, Trial of Suit Under United States' Drug Dealer Liability Acts, 145 Am. Jur. Trials 1, § 2 (Sept. 2018 Update); see Model Drug Dealer Liability Act (Model Act) (*Model Act*, Model DDLA.com, http://www.modelddla.com/Model_Act.htm (last visited Oct. 26, 2018) [https://perma.cc/CA9Y-X9JP]). At least 18 states and one territory of the United States have adopted the Model Act or some version of it. Williams, *supra*, § 2.

¶ 5 The stated purposes of the Act are (1) "to provide a civil remedy for damages to persons in a community injured as a result of illegal drug use," (2) "to shift, to the extent possible, the cost of the damage caused by the existence of the illegal drug market in a community to those who illegally profit from that market," (3) "to establish the prospect of substantial monetary loss as a deterrent to those who have not yet entered into the illegal drug distribution market," and (4) "to establish an incentive for drug users to identify and seek payment for their own drug treatment from those dealers who have sold drugs to the user in the past." 740 ILCS 57/5 (West 2016).

¶ 6 Persons who may bring an action for damages include:

"(1) A parent, legal guardian, child, spouse or sibling of the individual drug user.

(2) An individual who was exposed to an illegal drug in utero.

(3) An employer of the individual drug user.

(4) A medical facility, insurer, governmental entity, employer, or other entity that funds a drug treatment program or employee assistance program for the individual drug user or that otherwise expended money on behalf of the individual drug user.

"(5) A person injured as a result of the willful, reckless, or negligent actions of an individual drug user." *Id.* § 25(a).[1]

¶ 7 The Act identifies two potential defendants. Under section 25(b)(1), a plaintiff may seek damages from "[a] person who knowingly distributed, or knowingly participated in the chain of distribution of, an illegal drug that was actually used by the individual drug user." *Id.* § 25(b)(1). The parties here refer to section 25(b)(1) as the "Direct Liability Provision."

¶ 8 Under section 25(b)(2), a plaintiff may also seek damages from

"[a] person who knowingly participated in the illegal drug market if:

(A) the place of illegal drug activity by the individual drug user is within the illegal drug market target community of the defendant;

(B) the defendant's participation in the illegal drug market was connected with the same type of illegal drug used by the individual drug user; and

(C) the defendant participated in the illegal drug market at any time during the individual drug user's period of illegal drug use." *Id.* § 25(b)(2).

¶ 9 The "place of illegal drug activity" referenced in section 25(b)(2)(A) is defined as "each Illinois Representative District in which the individual possesses or uses an illegal drug or in which the individual resides, attends school, or is employed during the period of the individual's illegal drug use, unless the defendant proves otherwise by clear and convincing evidence." *Id.* § 15.

¶ 10 The "illegal drug market target community of the defendant," also referenced in section 25(b)(2)(A), is determined by the degree of the defendant's participation in the illegal drug market, as measured by the amount of drugs possessed or distributed. *Id.* § 40. Where the defendant's participation in the illegal drug market involves an amount of drugs at the lower end of the statutory scale—a so-called "Level 1 offense" (*id.* § 15)—the illegal drug market target community is the "Illinois Representative District in which the defendant's place of participation is situated." *Id.* § 40(1). As the degree of participation in the drug market increases based on the amount of drugs possessed or distributed, the illegal drug market target community also increases in size. Thus, where a defendant's participation in the illegal drug market constitutes a "Level 4 offense," the highest level (*id.* § 15), the illegal drug market target community of the defendant is the entire state. *Id.* § 40(4).

¶ 11 Because section 25(b)(2) requires that the area or community in which the illegal drug activity of the individual drug user took place must be within the area or community in which the defendant drug dealer operated, the parties here refer to section 25(b)(2) as the "Area Liability Provision."

¶ 12 A plaintiff may recover both economic and noneconomic damages proximately caused by an individual's illegal drug use, as well as exemplary damages, reasonable attorney fees, and costs of suit. *Id.* § 25(c). A person subject to liability under the Act has a right of contribution against another person subject to liability under the Act. *Id.* § 55.

¶ 13 Proof of the defendant's participation in the illegal drug market must be shown by clear and convincing evidence, while all other elements must be shown by a preponderance of the

---

[1]An individual drug user may also bring an action for damages, but recovery is limited (740 ILCS 57/30 (West 2016)) and subject to principles of comparative responsibility (*id.* § 50). The instant case does not involve a claim by an individual drug user.

evidence. *Id.* § 60(a). A person against whom recovery is sought who has a criminal conviction under state drug laws or under the federal Comprehensive Drug Abuse and Prevention Control Act of 1970 (21 U.S.C. § 801 *et seq.* (2012)) "is estopped from denying participation in the illegal drug market." 740 ILCS 57/60(b) (West 2016).

¶ 14　　The Act generally requires that a claim must be brought not more than two years after accrual of the cause of action (*id.* § 70) and contains a severability provision pursuant to section 1.31 of the Statute on Statutes (5 ILCS 70/1.31 (West 2016)). 740 ILCS 57/85 (West 2016).

¶ 15　　The General Assembly made numerous findings, set forth in section 10 of the Act, in which it recognized, *inter alia*, the cost to individuals, families, employers, and society of coping with the illegal drug trade; the necessity of using the civil justice system to provide an avenue of compensation for those injured by the marketing and distribution of illegal drugs; and the barriers to recovery for injured parties under existing tort law. *Id.* § 10.

¶ 16　　With this overview of the Act, we turn to the litigation at issue.

Wingert v. Hradisky

¶ 17

¶ 18　　This case arises out of the death of Michael Neuman from a drug overdose on June 9, 2012. Plaintiff is Neuman's minor son, Noah Wingert, by his mother and next friend, Cassandra Lee Wingert. Defendant is Patsy A. Hradisky, special administrator of the estate of Kevin Jatczak, deceased.[2] Plaintiff sued Jatczak for damages under the provisions of the Act.

¶ 19　　Count I of the fourth amended complaint alleged that, on or about June 9, 2012, and prior thereto, Jatczak owned certain premises in the city of Berwyn, at which he also resided; Jatczak distributed and/or sold Neuman and others illegal drugs, including cocaine, heroin, and opiates, at the premises; Jatczak used illegal drugs at the premises with Neuman and others; Jatczak knowingly participated in the illegal drug market; and as a direct and proximate result of the use, consumption, and/or distribution of illegal drugs, Neuman was then and there severely injured, resulting in his death on June 9, 2012. The complaint alleged that Noah Wingert has been permanently deprived of his father's support, love, society, affection, companionship, and services and has suffered emotional distress and mental anguish.

¶ 20　　Defendant filed a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)), asserting that the Act violates the due process clauses of both the federal and state constitutions by imposing an irrebuttable presumption of causation that has no rational connection between the fact requiring proof—the defendant's knowing participation in the illegal drug market—and the fact presumed—the defendant caused the plaintiff's injuries. Defendant also argued that the Act violates due process by utilizing a market share theory of liability purportedly rejected by this court in *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222 (1990).[3]

¶ 21　　The trial court denied defendant's motion as to section 25(b)(1) (the Direct Liability Provision) but granted defendant's motion as to section 25(b)(2) (the Area Liability Provision).

---

[2]Plaintiff also named as defendants Julie Holda and Simone Holda. They are not a part of this appeal.

[3]Pursuant to Rule 19 (Ill. S. Ct. R. 19 (eff. Sept. 1, 2006)), defendant notified the Illinois Attorney General of the constitutional challenge to the Act. The Attorney General elected not to intervene in the case.

The court found section 25(b)(2) violates due process and severed it from the Act. The trial court made no Rule 18 findings at that time. See Ill. S. Ct. R. 18 (eff. Sept. 1, 2006).

Plaintiff was later granted leave to file a fifth amended complaint, realleging previously dismissed counts to preserve the same for appeal. Count I against Jatczak remained the same but was necessarily limited by the court's constitutional ruling to a claim under section 25(b)(1) of the Act. As to that count, defendant filed a motion for summary judgment arguing that plaintiff failed to present any evidence that could support a finding that Jatczak knowingly provided or distributed the illegal drugs to Neuman that caused his overdose. Plaintiff responded that defendant's summary judgment motion should be denied because section 25(b)(1) of the Act does not require proof that Jatczak provided the drugs that caused Neuman's overdose. All that is required, plaintiff argued, is that Jatczak knowingly distributed, or knowingly participated in the chain of distribution of, an illegal drug that Neuman actually used. The trial court granted defendant's motion for summary judgment.

Plaintiff appealed directly to this court pursuant to Rule 302(a). Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011). We retained jurisdiction and remanded the matter to the trial court for the limited purpose of making and recording findings in compliance with Rule 18 (Ill. S. Ct. R. 18 (eff. Sept. 1, 2006)). The trial court's order on remand first clarified that, although defendant's constitutional challenge was raised in a section 2-615 motion to dismiss, the proper procedural vehicle is a motion to dismiss under section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2016)) and that the trial court treated defendant's motion as such. As to the merits, the trial court ruled that the Act institutes a form of market share liability that runs afoul of this court's decision in *Smith*. On this basis, the trial court found section 25(b)(2) unconstitutional on its face. The trial court also found section 25(b)(2) unconstitutional on its face as violative of substantive due process because the statute arbitrarily presumes that a defendant who participates in the illegal drug market caused the plaintiff's injury.

ANALYSIS

I. Section 25(b)(2)—Area Liability Provision

The trial court below held that section 25(b)(2) of the Act violates substantive due process under the state and federal constitutions because it arbitrarily and irrationally presumes that a defendant who participates in the illegal drug market caused the plaintiff's injury. In reaching this result, the trial court focused on the three requirements set forth in section 25(b)(2), which permits a plaintiff to recover damages from a person who knowingly participated in the illegal drug market where

> "(A) the place of illegal drug activity by the individual drug user is within the illegal drug market target community of the defendant;
> (B) the defendant's participation in the illegal drug market was connected with the same type of illegal drug used by the individual drug user; and
> (C) the defendant participated in the illegal drug market at any time during the individual drug user's period of illegal drug use." 740 ILCS 57/25(b)(2) (West 2016).

According to the trial court, proof of the facts set forth in subsections (A), (B), and (C) above has no rational relationship to the presumed fact—that the defendant drug dealer caused the plaintiff's injuries.

¶ 27    Plaintiff argues that the trial court's reasoning is flawed because the Act does not create a presumption of causation; instead, the Act abolishes the requirement of causation, and the only question is whether the legislature could lawfully do so. Plaintiff would answer that question in the affirmative. In response, defendant initially argues that section 25(b)(2) creates an unconstitutional presumption of causation and that imposing liability under such circumstances tramples foundational principles of our tort system and violates due process. [4] In the alternative, defendant argues that, if plaintiff is correct and section 25(b)(2) abolishes the causation element altogether, then section 25(b)(2) still violates substantive due process principles because imposing liability in the absence of "any causative link" between the parties is fundamentally unfair.

¶ 28    We begin with the presumption that the Act is constitutional. *People v. Ligon*, 2016 IL 118023, ¶ 11. The party challenging the Act—here, defendant—carries the burden of clearly rebutting this strong judicial presumption. *People v. Rizzo*, 2016 IL 118599, ¶ 23; *In re Rodney H.*, 223 Ill. 2d 510, 516 (2006). A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that under no circumstances would the statute be valid. *Rizzo*, 2016 IL 118599, ¶ 24. *"Facial invalidation is, manifestly, strong medicine that has been employed by the court sparingly and only as a last resort."* (Internal quotation marks omitted.) *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). Our duty is to uphold the constitutionality of the Act if reasonably possible to do so, resolving any doubts in favor of the Act's validity. *Rizzo*, 2016 IL 118599, ¶ 23. The constitutionality of the Act is a question of law, and thus we review the circuit court's conclusion *de novo*. *Id.*

¶ 29    The constitutional guarantee of due process is implicated "whenever the State engages in conduct towards its citizens deemed oppressive, arbitrary or unreasonable." *People v. McCauley*, 163 Ill. 2d 414, 425 (1994); see also *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (" 'touchstone of due process is protection of the individual against arbitrary action of government' " (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974))). Due process has two aspects: procedural and substantive. "Procedural due process bars governmental action that infringes upon a protected interest when such action is arbitrary because it was not preceded by procedural safeguards," whereas "[s]ubstantive due process bars governmental action that infringes upon a protected interest when such action is itself arbitrary." *People v. Pepitone*, 2018 IL 122034, ¶ 13; see also *Lewis*, 523 U.S. at 846 (due process protects against the denial of procedural fairness and against government power arbitrarily exercised). The instant case presents a substantive due process claim, and defendant does not assert that section 25(b)(2) of the Act regulates or restricts a liberty interest that constitutes a fundamental right. Therefore, the proper gauge for defendant's substantive due process claim is the rational basis test. *People v. Hollins*, 2012 IL 112754, ¶ 15. Under this test, "[a] statute will be upheld *** so long as it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable." *Id.*

---

[4]Because defendant does not argue that our state due process clause (Ill. Const. 1970, art. I, § 2) provides greater protection than its federal counterpart (U.S. Const., amend. XIV), we will treat the two clauses as coextensive. See *People v. Gray*, 2017 IL 120958, ¶ 56; *In re Marriage of Miller*, 227 Ill. 2d 185, 195-96 (2007).

¶ 30        Here, there is no question that the legislative purpose informing the Act is legitimate. Indeed, section 5 of the Act states explicitly the Act's purpose, and we find nothing the least bit objectionable or unreasonable in the language of that provision:

> "The purpose of this Act is to provide a civil remedy for damages to persons in a community injured as a result of illegal drug use. These persons include parents, employers, insurers, governmental entities, and others who pay for drug treatment or employee assistance programs, as well as infants injured as a result of exposure to drugs in utero ('drug babies'). This Act will enable them to recover damages from those persons in the community who have joined the illegal drug market. A further purpose of the Act is to shift, to the extent possible, the cost of the damage caused by the existence of the illegal drug market in a community to those who illegally profit from that market. The further purpose of the Act is to establish the prospect of substantial monetary loss as a deterrent to those who have not yet entered into the illegal drug distribution market. The further purpose is to establish an incentive for drug users to identify and seek payment for their own drug treatment from those dealers who have sold drugs to the user in the past." 740 ILCS 57/5 (West 2016).

The question therefore becomes whether section 25(b)(2) bears a reasonable relationship to this purpose and is neither arbitrary nor unreasonable. For the reasons that follow, we conclude that section 25(b)(2) does not meet this standard, as it is both arbitrary and unreasonable.

¶ 31        We initially note that, contrary to both defendant's argument and the trial court's analysis below, section 25(b)(2) does not create an irrebuttable presumption of causation. According to defendant, section 25(b)(2) presumes that a defendant caused the plaintiff's injuries through proof only of defendant's knowing participation in the illegal drug market. Citing *Tot v. United States*, 319 U.S. 463 (1943), and *Western & Atlantic R.R. v. Henderson*, 279 U.S. 639 (1929), defendant argues that the Act violates due process because there is "no rational connection between the facts proved and the ultimate fact presumed." *Tot*, 319 U.S. at 467.

¶ 32        In *Tot*, the statute expressly provided that possession of a firearm by a person convicted of a crime of violence " 'shall be presumptive evidence' " that the firearm was shipped in interstate commerce in violation of the Federal Firearms Act. *Id.* at 464 (quoting 15 U.S.C. § 902(f) (1940)). In *Henderson*, the statute expressly provided that, in claims against a railroad company for damage to person or property, unless the company proved that their agents exercised ordinary care and diligence, " 'the presumption in all cases [will be] against the company.' " *Henderson*, 279 U.S. at 640 (quoting Georgia Civil Code § 2780). Defendant here can point to no similar language in the Act creating a presumption of causation. Instead, the Act creates a new cause of action that does not require proof of causation, as that term is typically understood in the common law of negligence.

¶ 33        Standing alone, this fact does not render section 25(b)(2) constitutionally infirm. Indeed, "[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *Grand Trunk Western Ry. Co. v. Industrial Comm'n*, 291 Ill. 167, 173 (1919). The General Assembly may depart from the common law and adopt new causes of action that have no counterpart in the common law or equity. *Id.* at 174; *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002); see also *People v. Gersch*, 135 Ill. 2d 384, 395 (1990) (legislature has the "inherent power to repeal or change the common law, or do away with all or part of it"). The General Assembly has "broad power to determine

- 7 -

whether a statute that restricts or alters an existing remedy is reasonably necessary to promote the general welfare." *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 519-20 (2000); see also *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 364 (1985) ("legislature has broad discretion to determine not only what the public interest and welfare require, but to determine the measures needed to secure such interest"). Although causation is considered a "fundamental precept of tort law" (*Smith*, 137 Ill. 2d at 260), causation "is not an end of the legal system, but rather the means by which the legal system achieves its purposes," and thus may be modified where it proves inadequate. (Internal quotation marks omitted.) *Id.* at 271 (Clark, J., concurring in part and dissenting in part, joined by Calvo, J.).

¶ 34    All of that said, section 25(b)(2) goes far beyond simply relieving the plaintiff of its common-law obligation to prove proximate causation. In a truly unprecedented legislative move, section 25(b)(2) allows a plaintiff to recover substantial civil damages from a defendant who not only was not the proximate cause of the plaintiff's damages but who also has no relationship with or connection to the identified illegal drug user. It does this by empowering the plaintiff to arbitrarily select the most convenient defendant from within a specified geographic region, whether or not that defendant in any way contributed to the drug use at issue. In fact, even where it is known with perfect certainty that the named defendant did *not* contribute to the drug use, section 25(b)(2) would still permit the plaintiff not only to proceed but also to prevail against that defendant. This is because it is no defense under section 25(b)(2) to have played no contributing role whatsoever in the relevant drug use. And once a defendant has been named, section 25(b)(2) then permits the plaintiff to recover from that person substantial monetary damages, including economic damages, noneconomic damages, exemplary damages, attorney fees, and costs of suit.

¶ 35    To repeat, "[s]ubstantive due process bars governmental action that infringes upon a protected interest when such action is itself arbitrary." *Pepitone*, 2018 IL 122034, ¶ 13. Here, section 25(b)(2) not only allows but actually invites a person injured by another person's illegal drug use to recover substantial economic damages from persons having no connection to or nexus with that drug use. It is difficult to conceive of a civil liability statute more unreasonable or arbitrary than this, and we therefore affirm the trial court's finding that section 25(b)(2) of the Act is facially unconstitutional.

¶ 36    In opposition to this result, plaintiff argues that this court has rejected similar due process challenges to civil liability statutes that, like section 25(b)(2), dramatically depart from established common-law principles of causation. For example, plaintiff points to the Dramshop Act (235 ILCS 5/6-21 (West 2016)), under which those injured by an intoxicated person have a cause of action against not only licensed liquor vendors who, by selling or giving alcohol to that person, "causes the intoxication of such person" but also any landlord or property owner who knowingly permitted his or her property to be used for the sale of that alcohol. *Id.* § 6-21(a). Similarly, plaintiff points to the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2016)), which "imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462 (1990). According to plaintiff, both the Dramshop Act and the Workers' Compensation Act parallel section 25(b)(1), in that both dispense with traditional causation principles in favor of a statutory scheme of no-fault liability. See, *e.g.*, *Charles v. Seigfried*, 165 Ill. 2d 482, 487 (1995) ("[t]he Dramshop Act has never imposed liability

predicated on negligence or fault; rather, it imposes a form of 'no-fault' liability"); *Meerbrey*, 139 Ill. 2d at 462. In other words, plaintiff argues that, if substantive due process allows for no-fault liability in both the dramshop and workers' compensation contexts, it should likewise allow for it in the illegal drug market context.

¶ 37     The problem with plaintiff's argument is that it overlooks an important and dispositive distinction between the Dramshop Act and the Workers' Compensation Act, on the one hand, and section 25(b)(2) on the other. Namely, unlike section 25(b)(2), both the Dramshop Act and the Workers' Compensation Act require a direct and transactional relationship between the plaintiff and the defendant. The Dramshop Act does not permit someone injured by an intoxicated person to arbitrarily select and sue any area tavern, whether or not that tavern sold the alcohol at issue. On the contrary, actions under the Dramshop Act may be brought only against "any person, licensed under the laws of this State or of any other state to sell alcoholic liquor, who, by selling or giving alcoholic liquor, within or without the territorial limits of this State, *causes the intoxication of such person*." (Emphasis added.) 235 ILCS 5/6-21(a) (West 2016). Likewise, the Workers' Compensation Act does not permit an injured worker to recover compensation from any area employer, whether or not he or she actually works for that employer. Nor does it make an employer liable for every injury suffered by one its employees, even those injuries wholly unrelated to the employee's work. On the contrary, under the Workers' Compensation Act, an employer is liable only to its "own immediate employees" and to those contractors and subcontractors it "directly or indirectly engages," and it is liable only for those injuries "arising out of and in the course of the employment." 820 ILCS 305/1(a)(3), (d) (West 2016). This is a far cry from section 25(b)(2), which, as we have already discussed, authorizes the recovery of substantial monetary damages from a defendant who has no known connection to the identified drug use and who, in some cases, will be known to have no connection whatsoever. Stated differently, even where they authorize no-fault liability, the Dramshop Act and the Workers' Compensation Act still require proof of some degree of transactional relationship between the parties before liability will attach. By contrast, section 25(b)(2) requires no relationship between the parties whatsoever for liability to attach. From our perspective, that simply pushes past the limits of what substantive due process permits.

¶ 38     In reaching this result, we wish to state clearly that we are entirely sympathetic to the significant public policy challenges that drove the legislature to enact section 25(b)(2) . The legislative findings set forth in section 10 of the Act paint a vivid and sobering picture of the steep costs to individuals, families, employers, the government, and society of coping with the illegal drug market, as well as of the significant barriers to obtaining compensation in a civil action under existing law for damages related to the distribution of illegal drugs. We acknowledge the reality of this problem. Even so, the law we make today is the law that will govern tomorrow, and we simply cannot countenance the sacrifice of fundamental legal principles, even when the cause is righteous. In *Smith*, 137 Ill. 2d at 266, we cautioned against accepting such sacrifices "merely because the defendants are members of the drug industry." In the same way, and as tempting as it might be, we cannot close our eyes to the serious constitutional flaws in section 25(b)(2) merely because the defendants are alleged drug dealers.

¶ 39                    II. Section 25(b)(1)—Direct Liability Provision

¶ 40       We now turn to section 25(b)(1) of the Act. Following the trial court's ruling that section 25(b)(2) of the Act is facially unconstitutional, count I of plaintiff's fifth amended complaint could proceed, if at all, only under section 25(b)(1) of the Act. Under section 25(b)(1), a plaintiff may seek damages from "[a] person who knowingly distributed, or knowingly participated in the chain of distribution of, an illegal drug that was actually used by the individual drug user." 740 ILCS 57/25(b)(1) (West 2016).

¶ 41       Defendant filed a motion for summary judgment arguing that plaintiff failed to present any evidence that could support a finding that Jatczak knowingly provided or distributed the illegal drugs from which Neuman fatally overdosed and, thus, no genuine issue of material fact existed. Plaintiff argued that section 25(b)(1) does not require proof that Jatczak provided the illegal drugs to Neuman on the date of death. The trial court granted defendant's summary judgment motion. Plaintiff argues that the trial court erred in its reading of section 25(b)(1) and thus erred in granting summary judgment.

¶ 42       Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). Whether a material question of fact exists in this case is dependent, in the first instance, on what a plaintiff proceeding under section 25(b)(1) of the Act is required to prove. Because an issue of statutory interpretation is presented and because it arises from a summary judgment motion, our standard of review is *de novo*. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 30.

¶ 43       The rules of statutory construction are well settled. Our primary objective is to ascertain and give effect to the intent of the legislature. *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 22. The most reliable indicator of the legislature's intent is the language employed in the statute, which must be given its plain and ordinary meaning. *Id.* Where the statutory language is clear and unambiguous, effect must be given to that language, without resort to extrinsic aids of statutory construction (*In re Shelby R.*, 2013 IL 114994, ¶ 32) and without reading into the statute exceptions, limitations, or conditions that the legislature did not express (*Moon v. Rhode*, 2016 IL 119572, ¶ 22).

¶ 44       The trial court clearly misread section 25(b)(1). Under the plain language of that statute, a plaintiff need only establish that the defendant "knowingly distributed, or knowingly participated in the chain of distribution of, an illegal drug that was actually used by the individual drug user." 740 ILCS 57/25(b)(1) (West 2016). But under the trial court's reading of section 25(b)(1), a plaintiff would be required to establish not only that proposition, but in cases where the drug user died from a drug overdose, the plaintiff would also be required to establish that the person knowingly distributed, or knowingly participated in the chain of distribution of, the illegal drug that caused the overdose. Nothing in the plain language of section 25(b)(1) supports the trial court's reading, and no rule of construction permits a court to rewrite a statute to include additional elements. See *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 15.

¶ 45       In response to this, defendant argues that, unless section 25(b)(1) is read to require proof that the drugs the defendant supplied to the drug user caused the fatal overdose, section 25(b)(1), like section 25(b)(2), will be rendered unconstitutional because it negates any

showing of causation. We disagree. As discussed above, the fatal defect in section 25(b)(2) is not the elimination of proximate cause but rather the recovery of civil damages from a defendant having absolutely no connection to the identified drug use. Section 25(b)(1) suffers from no such defect. On the contrary, to recover under that section, a plaintiff must prove that the defendant "knowingly distributed, or knowingly participated in the chain of distribution of, an illegal drug that *was actually used by the individual drug user*." (Emphasis added.) 740 ILCS 57/25(b)(1) (West 2016). Thus, unlike section 25(b)(2), section 25(b)(1) imposes liability only in cases in which the parties have an existing and proven transactional connection. Nothing about this is arbitrary, and nothing about it allows a plaintiff to shop from a pool of strangers and choose whom from among them to hold responsible for the claimed injuries.

¶ 46 In this way, section 25(b)(1) closely resembles the Workers' Compensation Act, the constitutionality of which this court has long upheld. See *Moushon v. National Garages, Inc.*, 9 Ill. 2d 407, 412 (1956); *Grand Trunk Western Ry. Co. v. Industrial Comm'n*, 291 Ill. 167, 173 (1919). In both instances, the legislature concluded as a matter of public policy that certain relationships should carry with them liability rules previously unknown at common law. In the workers' compensation context, the legislature recognized the difficulty facing workers who sought damages under traditional negligence principles where the employer could assert the defenses of contributory negligence, assumption of risk, and the fellow servant rule. To remedy this and to ensure an acceptable guaranteed level of compensation for injured workers, the Workers' Compensation Act eliminates these defenses while simultaneously limiting an employee's right to claim certain elements of common-law negligence. The net effect is a "no-fault" liability system for the employer/employee relationship, a system this court has consistently deemed "a reasonable exercise of the legislature's police power for the promotion of the general welfare." *Moushon*, 9 Ill. 2d at 412. In much the same way, the legislature has now recognized that traditional common-law negligence principles create an undue barrier to compensation for persons injured by another's illegal drug use. See 740 ILCS 57/10(7) (West 2016). To remedy this, and to ensure both a greater likelihood of recovery for such persons and a greater exposure to liability for the associated drug dealers, section 25(b)(1) imposes civil liability on everyone in the illegal drug user's supply chain, irrespective of traditional common-law conceptions of fault. The net effect is a "no-fault" liability system for the illegal drug dealer/illegal drug user relationship, and we regard this system every bit the "reasonable exercise of the legislature's police power for the promotion of the general welfare" as we do the workers' compensation system.

¶ 47 For these reasons, we reject both the trial court's insertion of a proximate cause element into section 25(b)(1) and defendant's argument that the absence of such an element renders the provision unconstitutional under the due process clause. Section 25(b)(1) is constitutional as written, and we therefore reverse the trial court's decision granting defendant's motion for summary judgment on count I of plaintiff's fifth amended complaint.

¶ 48                                                    CONCLUSION

¶ 49 For the reasons stated, we affirm the trial court's decision finding section 25(b)(2) of the Act unconstitutional and severing it from the Act, reverse the trial court's decision granting defendant's motion for summary judgment on count I of plaintiff's fifth amended complaint,

and remand the cause to the trial court for further proceedings consistent with this opinion.

¶ 50    Affirmed in part, reversed in part, and remanded.

¶ 51    JUSTICE BURKE, concurring in part and dissenting in part:

¶ 52    The majority holds, and I agree, that section 25(b)(2) of the Drug Dealer Liability Act (740 ILCS 57/25(b)(2) (West 2016)) is unconstitutional. Section 25(b)(2) is an extraordinary provision. It imposes on a defendant who "participates" in an illegal drug market the burden of entirely compensating a plaintiff for injuries resulting from an individual drug user's illegal drug use, so long as the defendant's "participation" took place within two years and within the same Illinois representative district as the illegal drug use and so long as the defendant's "participation" was "connected with the same type" of illegal drug used by the individual drug user. *Id.*; see *id.* § 15. Section 25(b)(2) does not restrict the compensatory burden placed on an illegal drug dealer to his proportionate share of the illegal drug market, thereby limiting his liability, at least in principle, to his share of the total aggregate injuries he actually caused. See, *e.g.*, *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 237 (1990); Richard W. Wright, *Once More Into the Bramble Bush: Duty, Causal Contribution, and the Extent of Legal Responsibility*, 54 Vand. L. Rev. 1071, 1131-32 (2001). Nor does section 25(b)(2) merely create a monetary fine, equally imposed on all illegal drug dealers. Instead, section 25(b)(2) places the plaintiff's entire compensatory burden on a single defendant. And it does this without requiring the plaintiff to prove the defendant actually distributed any illegal drugs or even attempted to distribute any illegal drugs[5]; without requiring the plaintiff to prove the defendant's conduct was a cause-in-fact of the plaintiff's injuries under the substantial factor test, the but-for test, or any other test of cause-in-fact; and without requiring the plaintiff to prove the defendant was engaged in a joint enterprise, concerted action, or similar venture with any person whose actions were a cause-in-fact of the plaintiff's injuries. In short, section 25(b)(2) allows a plaintiff to recover full compensation from a defendant without requiring proof the defendant's conduct was, in any respect or under any legal theory, a cause-in-fact of *any* injury to *any* person. Imposing the plaintiff's entire compensatory burden on one person in this way is an arbitrary and oppressive exercise of state power. I therefore agree with the majority that section 25(b)(2) was enacted in violation of article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2).

¶ 53    For the same reasons, however, I would also hold that section 25(b)(1) (740 ILCS 57/25(b)(1) (West 2016)) is unconstitutional. Section 25(b)(1) states that a plaintiff may seek damages from "[a] person who knowingly distributed, or knowingly participated in the chain of distribution of, an illegal drug that was actually used by the individual drug user." *Id.* Just as with section 25(b)(2), there is no requirement under section 25(b)(1) that the plaintiff prove the defendant's conduct was, in any way, shape, or form, a cause-in-fact of any injury to any person. Indeed, in some respects, section 25(b)(1) is even more extreme than section 25(b)(2). Section 25(b)(1) requires no proof of geographical or temporal proximity to the illegal drug use, nor does it require that the defendant's participation in the chain of distribution involve, or be connected with, the same type of illegal drug actually used by the individual drug user.

---

[5]A defendant can be found to have "participated" in an illegal drug market merely by "agreeing" to possess with an intent to distribute, or even by merely "agreeing" to commit an act that is only "intended to" facilitate the marketing and distribution of an illegal drug. 740 ILCS 57/15 (West 2016).

To illustrate the effect of this, consider the following. A drug dealer in Springfield, Illinois, sells an illegal marijuana cigarette to a drug user who smokes the cigarette without incident in the same town. A year-and-a-half later, a different drug dealer in Chicago sells heroin to the same drug user who, as result of ingesting the heroin in that town, dies. Under the plain language of section 25(b)(1), a plaintiff may sue the Springfield marijuana dealer for the injuries caused by the Chicago drug dealer's sale of heroin to the drug user because the Springfield dealer knowingly distributed an illegal drug that was "actually used by the individual drug user." *Id.* Section 25(b)(1) is equally as arbitrary and oppressive as section 25(b)(2) and equally as unconstitutional. Accordingly, I specially concur in part and dissent in part.

¶ 54       JUSTICE NEVILLE joins in this partial concurrence, partial dissent.

¶ 55       JUSTICE THEIS, concurring in part and dissenting in part:

¶ 56       I agree with the majority that section 25(b)(1) of the Drug Dealer Liability Act (740 ILCS 57/25(b)(1) (West 2016)), the so-called "direct liability" provision, does not violate due process. I disagree with the majority that section 25(b)(2) of the Act (*id.* § 25(b)(2)), the so-called "area liability" provision, violates due process.

¶ 57       The fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art I, § 2) provide that no person shall be deprived of life, liberty, or property without due process of law. Where a statute is challenged on due process grounds, the initial step of our analysis is to determine whether the statute restricts or regulates a liberty or property interest. *People v. Pepitone*, 2018 IL 122034, ¶ 14; *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 37 ("An initial requisite for a due process claim *** is the existence of a protected interest."); see *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.").

¶ 58       The lead opinion inexplicably bypasses that step. The lead opinion states that the defendant "does not assert that section 25(b)(2) of the Act regulates or restricts a liberty interest that constitutes a fundamental right." *Supra* ¶ 29. In fact, the defendant does not specifically identify what liberty interest is affected by the Act. The defendant argues that the area liability provision violates her due process rights because it "imposes an irrebuttable presumption of causation" and because it "imposes liability on a defendant without any showing that the defendant was a cause in fact or proximate cause of plaintiff's injuries or damages." From that, I gather that the defendant would claim a liberty interest in not being subject to such a presumption or a liberty interest in proof of causation.

¶ 59       The majority rejects both claims. The lead opinion states that, rather than creating a presumption of causation, "the Act creates a new cause of action that does not require proof of causation." *Supra* ¶ 32. Further, the lead opinion states that there is no vested interest in causation, which the legislature may modify or even abolish where it proves inadequate. *Supra* ¶ 33 (citing *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 271 (1990) (Clark, J., concurring in part and dissenting in part, joined by Calvo, J.).

¶ 60       Having dispensed with those possible liberty interests, however, the lead opinion does not directly offer a replacement. That is, the lead opinion does not address whether the Act affects

a liberty interest at all but simply assumes that it does. Apparently, the putative liberty interest at stake is that of an illegal drug dealer in escaping liability to the family of a deceased illegal drug user when the dealer has, in the lead opinion's view, "no connection to or nexus with" or no "direct and transactional relationship" with the user. *Supra* ¶¶ 35, 37. If such a "right" exists, I agree that it is far from fundamental. Thus, the proper gauge of the Act's constitutionality is the rational basis test. *Pepitone*, 2018 IL 122034, ¶ 14. Under that test, our inquiry is twofold. We must determine whether there is a legitimate state purpose behind the legislation. *Id.* If so, we must determine whether there is a rational relationship between that purpose and the means that the legislature has chosen to pursue it. *Id.*

¶ 61    The Act's purpose is stated in section 5 of the Act: (1) "to provide a civil remedy for damages to persons in a community injured as a result of illegal drug use"; (2) "to shift, to the extent possible, the cost of the damage caused by the existence of the illegal drug market in a community to those who illegally profit from that market"; (3) "to establish the prospect of substantial monetary loss as a deterrent to those who have not yet entered into the illegal drug distribution market"; and (4) "to establish an incentive for drug users to identify and seek payment for their own drug treatment from those dealers who have sold drugs to the user in the past." 740 ILCS 57/5 (West 2016). The lead opinion correctly states that "there is no question that the legislative purpose informing the Act is legitimate." *Supra* ¶ 30. The only question before us, then, is whether there is a rational connection between that purpose and how the legislature has chosen to pursue it—namely, the area liability provision.

¶ 62    The lead opinion fails to see such a connection between the purpose of the Act and the area liability provision because the lead opinion fails to see a connection between plaintiffs and defendants sued under that provision. The lead opinion states:

> "In a truly unprecedented legislative move, section 25(b)(2) allows a plaintiff to recover substantial civil damages from a defendant who not only wasn't the proximate cause of the plaintiff's damages but who also has no relationship with or connection to the identified illegal drug user. It does this by empowering the plaintiff to arbitrarily select the most convenient defendant from within a specified geographic region, whether or not that defendant in any way contributed to the drug use at issue. In fact, even where it is known with perfect certainty that the named defendant did *not* contribute to the drug use, section 25(b)(2) would still permit the plaintiff not only to proceed but also to prevail against that defendant. This is because it is no defense under section 25(b)(2) to have played no contributing role whatsoever in the relevant drug use." (Emphasis in original.) *Supra* ¶ 34.

According to the lead opinion, "[i]t is difficult to conceive of a civil liability statute more unreasonable or arbitrary than this." *Supra* ¶ 35.

¶ 63    The plaintiff points to the fact that this court has rejected due process challenges to the Dramshop Act and the Workers' Compensation Act—statutes that, like the Act, similarly depart from traditional causation principles. The lead opinion summarizes the plaintiff's argument: "[I]f substantive due process allows for no-fault liability in both the dramshop and workers' compensation contexts, it should likewise allow for it in the illegal drug market context." *Supra* ¶ 36. The lead opinion then asserts that that argument "overlooks an important and dispositive distinction" between the Dramshop Act and the Workers' Compensation Act and the Act at issue in this case. *Supra* ¶ 37. According to the lead opinion, the former two

require "proof of some degree of transactional relationship between the parties," and the latter requires "no relationship between the parties whatsoever for liability to attach." *Supra* ¶ 37.

¶ 64 The lead opinion's view of the relationship between drug dealers and drug users in the same community is not only naively narrow but also contrary to its acknowledgement that we must resolve any doubts in favor of the Act's validity. *Supra* ¶ 28 (citing *People v. Rizzo*, 2016 IL 118599, ¶ 23). The lead opinion refers to the legislature's "numerous findings" in section 10 of the Act. *Supra* ¶ 15. The lead opinion's brief summary of those findings fails to give them sufficient consideration. Here they are in their entirety:

"The legislature finds and declares all of the following:

(1) Every community in the country is affected by the marketing and distribution of illegal drugs. A vast amount of State and local resources are expended in coping with the financial, physical, and emotional toll that results from the existence of the illegal drug market. Families, employers, insurers, and society in general bear the substantial costs of coping with the marketing of illegal drugs. Drug babies and parents, particularly those of adolescent illegal drug users, suffer significant non-economic injury as well.

(2) Although the criminal justice system is an important weapon against the illegal drug market, the civil justice system can and must also be used. The civil justice system can provide an avenue of compensation for those who have suffered harm as a result of the marketing and distribution of illegal drugs. The persons who have joined the illegal drug market should bear the cost of the harm caused by that market in the community.

(3) The threat of liability under this Act serves as an additional deterrent to a recognizable segment of the illegal drug network. A person who has non-drug related assets, who markets illegal drugs at the workplace, who encourages friends to become users, among others, is likely to decide that the added cost of entering the market is not worth the benefit. This is particularly true for a first-time, casual dealer who has not yet made substantial profits. This Act provides a mechanism for the cost of the injury caused by illegal drug use to be borne by those who benefit from illegal drug dealing.

(4) This Act imposes liability against all participants in the illegal drug market, including small dealers, particularly those in the workplace, who are not usually the focus of criminal investigations. The small dealers increase the number of users and are the people who become large dealers. These small dealers are most likely to be deterred by the threat of liability.

(5) A parent of an adolescent illegal drug user often expends considerable financial resources, typically in the tens of thousands of dollars, for the child's drug treatment. Local and state governments provide drug treatment and related medical services made necessary by the distribution of illegal drugs. The treatment of drug babies is a considerable cost to local and state governments. Insurers pay large sums for medical treatment relating to drug addiction and use. Employers suffer losses as a result of illegal drug use by employees due to lost productivity, employee drug-related workplace accidents, employer contributions to medical plans, and the need to establish and maintain employee

- 15 -

assistance programs. Large employers, insurers, and local and state governments have existing legal staffs that can bring civil suits against those involved in the illegal drug market, in appropriate cases, if a clear legal mechanism for liability and recovery is established.

(6) Drug babies, who are clearly the most innocent and vulnerable of those affected by illegal drug use, are often the most physically and mentally damaged due to the existence of an illegal drug market in a community. For many of these babies, the only hope is extensive medical and psychological treatment, physical therapy, and special education. All of these potential remedies are expensive. These babies, through their legal guardians and through court-appointed guardian ad litem, should be able to recover damages from those in the community who have entered and participated in the marketing of the types of illegal drugs that have caused their injuries.

(7) In theory, civil action for damages for distribution of illegal drugs can be brought under existing law. They are not. Several barriers account for this. Under existing tort law, only those dealers in the actual chain of distribution to a particular user are sued. Drug babies, parents of adolescent illegal drug users, and insurers are not likely to be able to identify the chain of distribution to a particular user. Furthermore, drug treatment experts largely agree that users are unlikely to identify and bring suit against their own dealers, even after they have recovered, given the present requirements for a civil action. Recovered users are similarly unlikely to bring suit against others in the chain of distribution, even if they are known to the user. A user is unlikely to know other dealers in the chain of distribution. Unlike the chain of distribution for legal products, in which records identifying the parties to each transaction in the chain are made and shared among the parties, the distribution of illegal drugs is clandestine. Its participants expend considerable effort to keep the chain of distribution secret.

(8) Those involved in the illegal drug market in a community are necessarily interrelated and interdependent, even if their identity is unknown to one another. Each new dealer obtains the benefit of the existing illegal drug distribution system to make illegal drugs available to him or her. In addition, the existing market aids a new entrant by the prior development of people as users. Many experts on the illegal drug market agree that all participants are ultimately likely to be indirectly related. That is, beginning with any one dealer, given the theoretical ability to identify every person known by that dealer to be involved in illegal drug trafficking, and in turn each of those others known to them, and so on, the illegal drug market in a community would ultimately be fully revealed.

(9) Market liability has been created with respect to legitimate products by judicial decision in some states. It provides for civil recovery by plaintiffs who are unable to identify the particular manufacturer of the product that is claimed to have caused them harm, allowing recovery from all manufacturers of the product who participated in that particular market. The market liability theory has been shown to be destructive of market initiative and product development

when applied to legitimate markets. Because of its potential for undermining markets, this Act expressly adopts a legislatively crafted form of liability for those who intentionally join the illegal drug market. The liability established by this Act grows out of but is distinct from existing judicially crafted market liability.

(10) The prospect of a future suit for the costs of drug treatment may drive a wedge between prospective dealers and their customers by encouraging users to turn on their dealers. Therefore, liability for those costs, even to the user, is imposed under this Act as long as the user identifies and brings suit against his or her own dealers.

(11) Allowing dealers who face a civil judgment for their illegal drug marketing to bring suit against their own sources for contribution may also drive a wedge into the relationships among some participants in the illegal drug distribution network.

(12) While not all persons who have suffered losses as a result of the marketing of illegal drugs will pursue an action for damages, at least some individuals, guardians of drug babies, government agencies that provide treatment, insurance companies, and employers will find such an action worthwhile. These persons deserve the opportunity to recover their losses. Some new entrants to retail illegal drug dealing are likely to be deterred even if only a few of these suits are actually brought." 740 ILCS 57/10 (West 2016).

¶ 65    The lead opinion acknowledges that those findings "paint a vivid and sobering picture of the steep costs to individuals, families, employers, the government, and society of coping with the illegal drug market, as well as of the significant barriers to obtaining compensation in a civil action under existing law for damages related to the distribution of illegal drugs." *Supra* ¶ 38. In fact, the findings do more than paint a picture; they draw an unmistakable link between drug dealers and drug users in a community.

¶ 66    The legislature highlighted the intentionally clandestine nature of the illegal drug market and, more importantly, the interrelatedness and interdependence of those involved in that market. 740 ILCS 57/10(7), (8) (West 2016). Referencing expert opinion, the legislature expressly found that all participants in the market—all dealers and all users—are likely to be linked. *Id.* § 10(8). Dealers at all levels together have created a demand for illegal drugs, as well as a supply chain to serve that demand. *Id.* In light of that reality, the legislature sought to undermine the entire illegal drug market by adopting a new form of liability—market liability. *Id.* § 10(9). Persons who have entered the illegal drug market in a community, who participate in and build that market and ultimately benefit from it, should bear the costs of the harm caused by that market to that community. *Id.* § 10(2), (3), (4). The legislature decided that liability should be imposed against a dealer "within the illegal drug market target community" of the user (*id.* § 25(b)(2)(A)) "connected with the same type of illegal drug" consumed by the user (*id.* § 25(b)(2)(B)) "at any time during the *** user's period of illegal drug use" (*id.* § 25(b)(2)(C)). Liability attaches only when there is clear and convincing evidence that the defendant dealer participated in the illegal drug market (*id.* § 60(a)) at a specific place for a specific drug during a specific time.

¶ 67 The connection between plaintiffs and defendants sued under section 25(b)(2) was demonstrably apparent to the legislature. It should be just as apparent to this court. See *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998) ("The judgments made by the legislature in crafting a statute are not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data." (citing *Cutinello v. Whitley*, 161 Ill. 2d 409, 421-22 (1994))). So too, should the constitutional nexus between the area liability provision and the purpose of the Act. See *In re J.W.*, 204 Ill. 2d 50, 72 (2003) ("If there is any conceivable basis for finding a rational relationship, the statute will be upheld."); *Rizzo*, 2016 IL 118599, ¶ 45 ("If any state of facts can reasonably be conceived of to justify the enactment, it must be upheld.").

¶ 68 In reaching the opposite conclusion, the lead opinion announces that "we simply cannot countenance the sacrifice of fundamental legal principles, even when the cause is righteous." *Supra* ¶ 38. As support, the lead opinion cites *Smith*, 137 Ill. 2d at 266, where the court purportedly "cautioned against accepting such sacrifices." *Supra* ¶ 38. The lead opinion's reliance upon *Smith* in that regard is puzzling. In *Smith*, this court declined to adopt a form of market liability, stating that such a significant change in the common law is "most appropriate for the legislature to develop, with its added ability to hold hearings and determine public policy." *Smith*, 136 Ill. 2d at 262-63. Our holding in *Smith* was not couched in constitutional terms, and nothing in that case suggests that the legislature could not endorse such a market-share approach to liability without offending our federal or state constitutions. To the contrary, everything in that case suggests that *only* the legislature could do so. See also Nicholas Reiter, *Dollars for Victims of a "Victimless" Crime: A Defense of Drug Dealer Liability Acts*, 15 J.L. & Pol'y 1329, 1344 (2007) ("[W]hile critics of the [Model Drug Dealer Liability Act] contend that the statute is a departure from traditional tort law and compromises fundamental principles of justice, the notion that the legislature may, and should, create a remedy for plaintiffs who have been injured but who are barred from recovery under the common law is an established principle of legislative behavior."); *Steed v. Bain-Holloway*, 2015 OK CIV APP 68, ¶ 27, 356 P.3d 62 (Bell, J., dissenting) (stating that enactment of the Model Drug Dealer Liability Act is " 'a matter for the legislative body and not the courts' " (quoting *Case v. Fibreboard Corp.*, 743 P.2d 1062, 1067 (Okla. 1987))). It is a bait and switch to make such a statement in *Smith* and then retract it in the name of judicial legislation.

¶ 69 The lead opinion fundamentally misunderstands our role when it casually comments about "the law we make today." *Supra* ¶ 38. The Illinois Supreme Court does not make laws. The Illinois General Assembly does. "[P]rimary expression of Illinois public and social policy should emanate from the legislature." *Charles v. Seigfried*, 165 Ill. 2d 482, 493 (1995). Here, the legislature, through its adoption of the Act, has spoken. The legislature considered the role of dealers in sustaining the illegal drug market; the heavy toll that market exacts from individuals, families, employers, government, and society at large; and the inability of our current system of civil justice to provide a remedy for persons injured through another's use of illegal drugs. Although section 25(b)(2) of the Act pushes the boundary of civil liability by dispensing with traditional notions of causation, it cannot be said that the means that the legislature has chosen to advance the state's legitimate interest in dealing with the significant and costly impact of the illegal drug market is not rationally related to that interest.

¶ 70 The rational basis standard is highly deferential to the legislature's will. Our duty is to uphold the constitutionality of the Act if reasonably possible to do so. *Rizzo*, 2016 IL 118599,

¶ 23. I believe that it is more than reasonably possible to do so. I would hold that section 25(b)(2) of the Act does not violate substantive due process and reverse the decision of the trial court.

¶ 71        JUSTICE KILBRIDE joins in this partial concurrence, partial dissent.